IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| FAITH M. BLAKE, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 1:19-cv-369 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| CITY OF CHATTANOOGA, JAMES ) | Magistrate Judge Christopher H. Steger |
| HIXSON, *and* EUGENE SHILES, ) | |
| ) | |
| *Defendants*. ) | |

## **M E M O R A N D U M**

On August 3, 2020, the Magistrate Judge filed a report and recommendation (the "R&R") recommending this action be dismissed because it is barred by the applicable statute of limitations and recommending Plaintiff's motion to appoint counsel be denied. (Doc. 11.) After the Court granted Plaintiff's motion for an extension of time to file an objection, Plaintiff timely objected on February 16, 2021 (Doc. 15). *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6(d) (allowing three additional days after service by mail). The matter is now ripe for review.

### I.   BACKGROUND

#### A.   Plaintiff's Complaint

Plaintiff Faith Blake is a federal prisoner with a projected release date of April 13, 2051. Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Nov. 14, 2022). She was sentenced on October 1, 2015, after the Court accepted her guilty plea as voluntary and valid. (Doc. 674 at 3, Doc. 642 at 1 in Case No. 1:12-cr-104.) Plaintiff had pleaded guilty to three counts of the superseding indictment: two counts of conspiracy to distribute and dispense, and cause to be distributed and dispensed, Schedule II, III, and IV controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C); and one count of failure to appear, in violation

of 18 U.S.C. § 3146(a)(1), (b)(1)(A)(i). (Doc. 158 in Case No. 1:12-cr-104.) She owned and operated multiple pain management clinics that were established to prescribe controlled substances unlawfully. (*Id.* at 3–9.) During the pendency of Plaintiff's criminal prosecution, she was initially represented by attorney C. Eugene Shiles, then by attorney Hannah Christine Stokes, and finally by attorney John A. Brooks. (Docs. 29, 208, 498 in Case No. 1:12-cr-104.) She has been in federal custody since October 18, 2013, after she was apprehended in Hagerstown, Maryland, for absconding from supervision while released on bond. (Doc. 195 at 2, 5 in Case No. 1:12-cr-104.)

On December 23, 2019, Plaintiff filed a complaint under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants violated her rights under the First, Fourth, Fifth, and Fourteenth Amendments. (Doc. 1 at 1, 21–22.) Plaintiff cross-references her habeas petition (*id.* at 21; Doc. 2 in Case No. 1:18-cv-305), which this Court denied (Doc. 41 in Case No. 1:18-cv-305), with the denial affirmed by the Court of Appeals for the Sixth Circuit (Doc. 46 in Case No. 1:18-cv-305). Additionally, Plaintiff alleges Defendants committed sexual abuse, sexual harassment, sexual discrimination, mental and emotional abuse, witness tampering, false imprisonment, and intentional infliction of emotional distress. (Doc. 1 at 21–22.) Plaintiff also alleges she experienced deliberate indifference to her needs of protection and medical care while she was incarcerated in Silverdale Correctional Facility in Chattanooga, Tennessee. (Doc. 1 at 21.) Plaintiff named as Defendants the City of Chattanooga, Shiles, and James Hixson, a Chattanooga Police Department officer assigned to the Drug Enforcement Agency ("DEA") as a Task Force Officer. (*Id.* at 1.) She seeks a declaratory injunction that Defendants violated her constitutional rights; a preliminary and permanent injunction barring Hixson from field work and court appearances and barring Shiles

from serving as counsel on cases involving Hixson or Assistant U.S. Attorney Gregg L. Sullivan[1]; $1.5 million in compensatory damages; and $1.5 million in punitive damages. (*Id.* at 26–27.) Plaintiff sued Hixson in his official capacity and individual capacity. (*Id.* at 2.)

Plaintiff alleges Hixson had sex with her in 2010 after he approached her at the Electric Cowboy in Chattanooga. (*Id.* at 3.) They met again in the Red Lobster in Dalton, Georgia, and had sex later that night. (*Id.* at 3–5.) A little less than a week later, Hixson allegedly went to Plaintiff's house, where he trespassed into her living room. (*Id.* at 5.) Plaintiff alleges that Hixson caused Chattanooga Police Department officers to pull her over to check who the passengers of her car were. (*Id.* at 7.) She also alleges that Hixson followed her to various fast-food restaurants in Chattanooga after she rebuffed his sexual advances. (*Id.*) She claims that she experienced a pattern of escalating threats from Hixson and new police harassment of the clients at her pain clinic; Hixson allegedly offered his "protection" if she would entertain his sexual and romantic advances. (*Id.* at 10–11.)

After Plaintiff's indictment on the charges for which she is currently imprisoned, she alleges Hixson waited outside of her house. (*Id.* at 12–13.) He also allegedly threatened her on an unspecified Saturday night at a restaurant in Chattanooga that is now closed. (*Id.* at 14–15.) And because Plaintiff did not want to enter into a plea agreement, Hixson allegedly lied to the Court about Plaintiff opening another pain management clinic while out on bond. (*Id.* at 15.) Plaintiff claims that Hixson went to her house again and trespassed into the basement. (*Id.* at 16.)

Next, Plaintiff alleges Shiles, her court-appointed counsel, forced her to sign the plea agreement against her will. (*Id.* at 12.) Plaintiff claims that he fired an investigator she had hired

---

[1] Sullivan was the Assistant U.S. Attorney in Plaintiff's criminal prosecution. (Doc. 183 at 3 in Case No. 1:12-cr-104.)

without giving her adequate notice. (*Id.* at 16.) She also claims that he told her he would not fight against the charges despite her insistence that she was innocent and that he sent her a letter warning her not to "take anyone down with [her]." (*Id.* at 18, 20.)

Finally, Plaintiff alleges that Robert Watters, a DEA agent, conducted an unconstitutional warrantless search of her cellphone and truck upon Hixson's instruction. (*Id.* at 7, 17.) She also claims that the U.S. Marshals Service possessed a photo of her lying on her bed wearing a lace bra, which a Marshal allegedly showed to her during her arrest. (*Id.* at 19.)

**B.  Procedural History**

On August 3, 2020, the Magistrate Judge issued an R&R screening Plaintiff's complaint. (Doc. 11.) As an initial matter, the R&R recommended Plaintiff's motion to appoint counsel be denied because "the issues in this case are straightforward and legal, rather than complex and factual," and "[n]o extraordinary circumstances necessitate the appointment of counsel." (*Id.* at 4.) Next, the R&R found that Plaintiff's § 1983 action is barred by the statute of limitations for personal injury actions in the state where the claim arose—which is Tennessee's one-year statute of limitations for personal injury actions. (*Id.*) The R&R reasoned that although Plaintiff's allegations are undated, none of the events she alleged "could have occurred after October 31, 2012, as she had been in continuous custody since that time."[2] (*Id.* at 5.) Furthermore, all of her interactions with Shiles seemed to have occurred prior to her bond revocation. (*Id.*) Thus, because she was sentenced on October 1, 2015, her claims must have arisen before then, if not far earlier. (*Id.*) The R&R further concluded that any argument that extraordinary circumstances require extending the limitations period would be unavailing, given how her alleged injuries would have

---

[2] This statement does not address the period of time when Plaintiff had absconded from supervision, but that omission does not affect the analysis.

4

been "immediately apparent to her." (*Id.*) Therefore, Plaintiff's federal constitutional claims are time-barred. (*Id.*)

The R&R, for the sake of thoroughness, addressed her federal claims substantively despite their being time-barred. It noted that several of Plaintiff's constitutional claims would be dismissed even if they had been timely filed. (*Id.* at 6.) Plaintiff's claims against Shiles, her court-appointed counsel, must fail because he was not a state actor for the purposes of § 1983. (Doc. 29 in Case No. 1:12-cr-104.) And although Plaintiff named the City of Chattanooga as a defendant, she makes no allegations against it beyond alleging Chattanooga employed Hixson as a police officer. (Doc. 11 at 6.) *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), requires more than the existence of an employment relationship to establish the municipality's liability for the unconstitutional conduct of its employees. Thus, Plaintiff failed to state a claim against the City of Chattanooga. (*Id.*)

Finally, the R&R found Plaintiff's state law claims for false imprisonment, malicious prosecution, and injuries to the person are barred by same one-year statute of limitations barring her constitutional claims. (*Id.* at 7.) In the alternative, the R&R recommends that the Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over Plaintiff's state law claims. (*Id.*)

On September 1, 2020, having received no objections, the Court issued a judgment order accepting and adopting the R&R. (Doc. 12.) On October 7, 2020, Plaintiff moved for an extension of time to file objections because she never received a copy of the R&R. (Doc. 13 at 1.) On

January 1, 2021, the Court granted Plaintiff's motion and reopened the case to allow her to object. (Doc. 14.) On February 16, 2021, Plaintiff timely objected. (Doc. 15.)

II. **STANDARD OF REVIEW**

If a party objects to the proposed findings and recommendations of a magistrate judge, the party may file written objections. 28 U.S.C. § 636(b)(1)(C). The district court must then undertake a *de novo* review of the specific proposed findings or recommendations to which objection is made. *Id.* A specific objection is one that "explain[s] and cite[s] specific portions of the report which [the party] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709 (6th Cir. 1997)). "[T]he district court need not provide *de novo* review where the objections are 'frivolous, conclusive, or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1422–23 (5th Cir. 1996)).

III. **ANALYSIS**

Plaintiff objects to the R&R on seven grounds, arguing that the R&R relies on "egregious errors" to avoid conducting an evidentiary hearing, opening discovery, and resolving factual disputes. (Doc. 15 at 1.) The Court will address each objection in turn.

    A. **First Objection**

Plaintiff objects to the R&R's recommendation that her complaint be dismissed because her federal and state law claims are time-barred by Tennessee's one-year statute of limitations for personal injury actions and civil actions under the federal civil rights statutes. (*Id.*) She argues that the statute of limitations is an affirmative defense that the Defendants have the burden of pleading to show that her claim is time-barred. (*Id.*) Thus, she argues, the "court attempts to make

6

the affirmative defense for the defendants, aiding [sic] to the many times the [Plaintiff] has claimed this court to be bias and does exercise prejudice with regards to the [Plaintiff]" by purposely leaving out "vital information." (*Id.* at 2.)

According to 28 U.S.C. § 1915(e)(2)(B)(ii), for actions brought *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted." A complaint is subject to dismissal for failure to state a claim if the factual allegations, taken as true, do not entitle the plaintiff to relief: " If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Therefore, because Plaintiff filed her complaint *in forma pauperis*, the Court must dismiss her case at any time if it determines that her claims fail, including for frivolousness or because a statute of limitations bars her claims.

"Although a statute of limitations defense is an affirmative defense that ordinarily must be raised by a defendant, the defense may nonetheless be raised *sua sponte* by the Court in circumstances when it clearly applies." *Annette v. Haslam*, No. 3:18-cv-1299, 2020 WL 2520512, at *2 (M.D. Tenn. May 18, 2020) (quoting *Annette v. Haslam*, No. 3:18-cv-1299, 2020 WL 434162, at *12 (M.D. Tenn. Jan. 27, 2020)). "If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*." *Watson v. Wayne Cnty.*, 90 F. App'x 814, 815 (6th Cir. 2004) (citing *Pino v. Ryan*, 4 F.3d 51, 53–54 (2d Cir. 1995)).

"The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). When state law provides

7

multiple statutes of limitations for personal injury actions, the court should borrow the general or residual statute for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989).

Because Plaintiff's claims arise out of actions that allegedly occurred in Tennessee, Tennessee's statute of limitations for torts applies. Tennessee has a one-year statute of limitations for actions "for injuries to the person," "false imprisonment," and "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes." Tenn. Code Ann. § 28-3-104(a)(1)(A), (B). The one-year clock starts running right when the injuries occur. *Id.*

Plaintiff states that the events in her complaint began in 2010, when she allegedly first met Hixson, but she does not mention any other dates. (Doc. 1 at 2.) However, she was in continuous federal custody from her arrest in Hagerstown, Maryland, on October 18, 2013, until her sentencing on October 1, 2015. (Doc. 668 at 2; Doc. 674 at 1 in Case No. 1:12-cr-104.) Indeed, she mentions her arrest in Hagerstown near the end of her recitation of facts, which indicates that all the events leading up to that point occurred before October 18, 2013. (Doc. 1 at 19.) Plaintiff did not file her complaint with this Court until December 23, 2019, which is more than one year after the alleged injuries occurred. Therefore, it is obvious from the face of the complaint that the events forming the basis of her claims are time-barred by the strict one-year statute of limitations, and so the Court is obligated to address the statute-of-limitations issue without waiting for Defendants to raise it in their answer.

**B.    Second Objection**

Plaintiff objects on the basis that her "intentional tort should not be subject to a statute of limitation" because "[d]ifferent kinds of lawsuits involve different statutes of limitations." (Doc. 15 at 2.) She cites *Owens*, 488 U.S. 243–50, to support this proposition. (*Id.*)

Plaintiff's contention is incorrect. The one-year statute of limitations applies to her state- and federal-law claims. Tenn. Code Ann. § 28-3-104(a)(1) provides a one-year statute of limitations for "injuries to the person" and for "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes." *Owens* did not, as Plaintiff asserts, hold that intentional torts are not subject to any statute of limitations. Instead, *Owens* addressed a situation where New York State had a one-year statute of limitations for intentional torts and a three-year statute of limitations for all personal injury claims not covered by specific statutes of limitations, so it was unclear which statute of limitations applied to the plaintiffs' § 1983 claims. 488 U.S. at 237–38. The Supreme Court held that the statute of limitations for general personal injury claims applied to § 1983 claims. *Id.* at 251. Tennessee's one-year statute of limitations squarely applies to Plaintiff's claims under § 1983—a federal civil rights statute—and her state law claims of false imprisonment and intentional infliction of emotional distress. \

Accordingly, the Court overrules Plaintiff's second objection.

### C. Third Objection

Plaintiff objects to the R&R's second footnote, which states that it is unnecessary for the Magistrate Judge to make findings concerning Plaintiff's factual allegations against Hixson and Shiles and notes that Hixson and Shiles "routinely appear before the Court and have a reputation for integrity and composure that is in the starkest possible contrast to the allegations in the Complaint." (Doc. 15 at 2–3; Doc. 11 at 2 n.2.) She argues that the Court "has proven that its members are not truly [independent] and has clearly stated their views of the defendants." (Doc. 15 at 2.) Citing *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008), and *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007), she argues that the footnote amounts to a determination of the Defendants' character and the credibility of her factual allegations, which the district court may

9

not do when ruling on a motion. (*Id.* at 3.) She states she has requested Judge Collier to recuse himself three times. (*Id.* at 2.)

The Court understands Plaintiff may have been confused by the footnote. However, as the R&R stated, and as required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court accepts all well-pleaded factual allegations in Plaintiff's complaint as true. (Doc. 11 at 4.) *Jenkins* and *Washington* address the district court's role when ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56, 540 F.3d at 744; 481 F.3d at 546, which is a different procedural posture than when the Court reviews an R&R. The R&R's footnote played absolutely no role in the R&R's analytical reasoning or legal conclusions. In short, the Court disagrees with Plaintiff's baseless allegations of judicial bias.

### D. Fourth Objection

Plaintiff objects on the basis that "the court showed their favor to its agents and not a citizen of the United States of America." (Doc. 15 at 4.) She quotes *Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985), and *Wolff v. McDonnell*, 418 U.S. 539 (1974), to argue that her constitutional rights as a prisoner were violated. (*Id.*)

It is unclear to the Court the relevance of this argument. *Cleavinger* holds that the members of a federal prison's Institution Discipline Committee are entitled only to qualified immunity. 474 U.S. at 194, 207. *Wolff* holds that some aspects of Nebraska's statutes and prison regulations regarding prison discipline violated prisoners' due process rights. 418 U.S. at 545, 560. Here, it is true that Plaintiff is a federal prisoner afforded certain constitutional rights, but nowhere does she allege violations of her constitutional rights in relation to prison disciplinary procedures. She did allege "deliberate indifference to [her] needs of protection and medical while in Silverdale" Correctional Facility, but her complaint contains nothing but that single conclusory allegation.

(Doc. 1 at 21.) And there is certainly no mention of her due process rights in relation to inmate discipline, which is what *Wolff* and *Cleavinger* are about. Accordingly, the Court rejects this objection as irrelevant.

### E. Fifth Objection

Plaintiff objects to the R&R "skip[ping] over all facts and causes in the [Plaintiff's] claims to 'simplify' or 'mini[mi]ze' the Complaint." (Doc. 15 at 4.)

First, she argues that her constitutional rights are being violated to this day and are continuing to be violated, and so the statute of limitations has not begun running and she can recover for the whole course of conduct even if it started outside of the limitations period. (*Id.*) Second, she argues that the Court should toll the limitations period because "the Court knows the [Plaintiff] has sought help for years and has never been afforded her right to be heard." (*Id.* at 5.) She argues that she has "practiced due diligence as much as she's allowed"; as a federal prisoner during the COVID-19 pandemic, she cannot access lawyers, law books, a computer, or a printer, and she has just one hour of limited access to the law library's computer. (*Id.*) She requests that her claims be tolled because she "was imprisoned during the time of her statute of limitations as to the factual allegation and threats, suffering, [failure to appear] charges, dures[s,] (mental and physical) violations of Constitution, rights violated by Hixson and Shiles." (*Id.*)

"The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). Equitable tolling, which is a fact-intensive inquiry, is used "sparingly," with the party seeking equitable tolling bearing the burden of proving she is entitled to it. *Robertson*, 624 F.3d

at 784, 786 (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)). "[C]ourts have consistently 'rejected arguments that lack of academic and legal education, ignorance of the law, and lack of legal assistance is enough to equitably toll the limitations period.'" *Vine v. Byrd*, 2021 WL 4552959, at *3 (quoting *Plummer v. Davis*, No. 2:07-cv-13857, at *4 (E.D. Mich. Jan. 21, 2010), *aff'd sub nom. Plummer v. Warren*, 463 F. App'x 501 (6th Cir. 2012)). In other words, *pro se* status and limited access to a law library alone do not warrant equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 645, 752 (6th Cir. 2011).

Here, Plaintiff failed to carry her burden of showing that she is entitled to equitable tolling. She states that she "has practiced due diligence as much as she's allowed" (Doc. 15 at 5), but this single conclusory statement simply does not render equitable tolling appropriate. And as the abundant case law demonstrates, Plaintiff's ignorance of the law and limited access to the prison law library and other resources also do not entitle her to equitable tolling. The Court is certainly very sympathetic to the difficulties imposed by the COVID-19 pandemic, but there simply are not any legal grounds for the Court to equitably toll Tennessee's one-year statute of limitations. Plaintiff has not demonstrated that there were circumstances outside of her control justifying equitable tolling. And finally, the Court rejects Plaintiff's contention that she "has never been afforded her right to be heard." (*Id.*) Plaintiff's present action, her previous habeas petition, and her motions for compassionate release and to reduce her sentence were carefully considered. (*See* Doc. 40 in Case No. 1:18-cv-305; Docs. 772, 773, 780 in Case No. 1:12-cr-104.)

The "continuing violation" doctrine can also toll the limitations period. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). A continuing violation requires the defendant's wrongful conduct to continue after the precipitating event that began the pattern, the injury to the plaintiff must continue to accrue after that event, and further injury to the plaintiff must have been avoidable

if the defendants had at any time ceased their wrongful conduct. *Eidson*, 510 F.3d at 635 (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). A continuing violation "is occasioned by continual unlawful acts, not continual ill effects from an original violation . . . . Passive inaction does not support a continuing violation theory." *Eidson*, 510 F.3d at 635 (quoting *Tolbert*, 172 F.3d at 940). It is well-established within the Sixth Circuit that plaintiffs are "precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817, 824 (6th Cir. 2009) (quoting *Sharpe*, 319 F.3d at 268).

Here, Plaintiff cannot use the continuing violation doctrine to preserve her time-barred claims. As the Court stated earlier, all of the allegedly unconstitutional and tortious acts that form the basis of Plaintiff's action occurred prior to her 2015 incarceration in federal prison. Her alleged encounters with Hixson occurred prior to her 2013 arrest and subsequent detention; her interactions with Shiles and the allegedly unconstitutional warrantless search of her cellphone occurred prior to her 2015 sentencing; and her alleged unconstitutional treatment in Silverdale Correctional Facility occurred prior to her federal incarceration in 2015. If there are any continuing injuries, they are merely the continual ill effects from the time-barred violations. This is precisely the type of residual effect that the Sixth Circuit has said is insufficient to trigger the continuing violation doctrine. New, discrete acts are required. Accordingly, Plaintiff has failed to demonstrate that extraordinary circumstances warrant tolling the one-year statute of limitations.

### F. Sixth Objection

Plaintiff objects on the ground that the R&R did not accept her well-pleaded factual allegations as true, which violates the concept of notice pleading. (Doc. 15 at 10.) She recites a

slew of detailed factual allegations against Hixson, Shiles, and the U.S. Marshals, and states that "deliberate indifference over her protection period this was not tied to her medical needs at Silverdale." (*Id.* at 6–10.) Some of the allegations are repeated from her complaint, others (such as an allegation that Hixson held a gun to her forehead (*id.* at 10)) she mentions for the first time in her objection. She argues that she made a *prima facie* case that Hixson did not act in a reasonable way, and so he violated the duty of care he owed to Plaintiff when she was a "free American citizen." (*Id.* at 6.) She contends, "Judge Collier never would hear from [Plaintiff] and always believed Hixson unquestionabl[y] and the magistrate is following in suit with these blind beliefs and effectively violating [Plaintiff's] constitutional rights and due process." (*Id.* at 7.)

As previously stated, the Court is required by statute to dismiss a case filed *in forma pauperis* if the Court determines that the action is frivolous or if it fails to state a claim on which relief may be granted. § 1915(e)(2)(B)(i)–(ii). Contrary to Plaintiff's objection, the Court did accept all of Plaintiff's factual allegations as true while evaluating her complaint under a *de novo* standard of review. The issue is that her legal claims under state law and § 1983 are barred by Tennessee's one-year statute of limitations, so there is no relief the Court could grant Plaintiff regardless of the veracity of her factual allegations. Accordingly, the Court will **DISMISS** Plaintiff's complaint pursuant to § 1915(e)(2)(B)(ii).

G.     **Seventh Objection: Motion to Appoint Counsel**

In her motion to appoint counsel, Plaintiff asks the Court to appoint counsel from Florida, Mississippi, Texas, or Knoxville, Tennessee. (Doc. 2 at 2.) She states that she is unable to afford counsel, has moved to proceed *in forma pauperis*, and her ability to litigate is greatly limited by her imprisonment and the factual complexity of her case. (*Id.*)

The R&R recommends Plaintiff's motion be denied because the issues in her case are straightforward and legal, rather than complex and factual, and no extraordinary circumstances require the appointment of counsel. (Doc. 11 at 4.)

Plaintiff objects on the basis that "[t]his claim is so complex and this court should find that a person's rights and life being abused and threatened by [the court's] own agents to be 'extraordinary and compelling.'" (Doc. 15 at 10.) She argues the facts in her complaint are extraordinary: "none of the actions nor treatments could possibly be found as 'normal' they would therefore be 'extraordinary.'" (*Id.* at 11.) She argues that the R&R is biased and this Court "wishes to protect theirs and leave the women abused who asked for help to rot in prison." (*Id.* at 10.)

Appointment of counsel in a civil case—such as the one here—is not a constitutional right; instead, it is a privilege "justified only by exceptional circumstances" turning on the type of the case and the plaintiff's ability to represent herself. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (first quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); then quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)). Appointment of counsel is inappropriate when a *pro se* plaintiff's claims are frivolous or when the "chances of success are extremely slim." *Lavado*, 992 F.2d at 606 (quoting *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)).

Here, Plaintiff has no chance of success in prevailing on her claims. As previously stated, her claims are barred by the one-year statute of limitations, and they are neither equitably tolled by the conditions of her incarceration nor are they tolled by the continuing violations doctrine. And her allegations of misconduct against Shiles and Hixson formed the basis of her earlier habeas petition, which this Court denied on its merits, with the denial affirmed on its merits by the Court of Appeals for the Sixth Circuit. (Docs. 41, 46 in Case No. 1:18-cv-305.) For those reasons, Plaintiff's complaint is frivolous. The factual issues are also straightforward enough that Plaintiff

15

was able to present them comprehensively in a linear and logical manner without the assistance of counsel. Accordingly, the Court agrees with the R&R that appointing counsel would be inappropriate. The Court will **DENY** Plaintiff's motion to appoint counsel (Doc. 2).

IV. <u>**CONCLUSION**</u>

After carefully reviewing the record in this case, including Plaintiff's objection, the Court agrees with the R&R. Plaintiff's objection (Doc. 15) will be **OVERRULED**. Plaintiff's motion to appoint counsel (Doc. 3) will be **DENIED.** The Court will **ACCEPT** and **ADOPT** the R&R (Doc. 11). Plaintiff's action will be **DISMISSED WITHOUT PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**